IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HYDRIL COMPANY, L.P., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-0337 |
| | § | |
| GRANT PRIDECO, L.P., *et al.*, | § | |
|     Defendants. | § | |

**MEMORANDUM AND ORDER**

This multi-faceted commercial case is before the Court on the Motion to Dismiss [Doc. # 14] filed by Defendants Grant Prideco, L.P. and Grant Prideco, Inc. (collectively "Grant Prideco"). The motion has been fully briefed and the parties have presented oral argument. Based on the Court's review of the full record, consideration of the parties' arguments, and the application of governing legal authorities, the Court concludes that the patent infringement claim must be dismissed, but Plaintiff Hydril Company, L.P. ("Hydril") is entitled to amend its complaint as to the antitrust claim.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Hydril manufactures and sells connections used to attach segments of drill pipe for use in the drilling of oil and gas wells. Grant Prideco manufactures and sells both drill pipe and connections.

In 1997, Hydril and Grant Prideco entered into a Merger Agreement pursuant to which the parties also entered into a licensing agreement referred to as the "Wedge Agreement." Hydril granted Grant Prideco the exclusive right to use Hydril's existing intellectual property, including United States Patent Reissue No. 34,467 ("the '467 Patent),

to made large diameter connections.  In exchange, Grant Prideco gave Hydril the exclusive license to make smaller-diameter connections.  The Merger Agreement also contains a provision under which each party waives all "rights and remedies relating to [the Merger] Agreement and the transactions contemplated [t]hereby sounding in . . . statute, . . . or injury outside [the Merger] Agreement."  *See* Merger Agreement, § 12.12.

Hydril alleges that Grant Prideco materially breached the Merger Agreement and, therefore, the Merger Agreement and associated license terminated, and Grant Prideco's continued use of the intellectual property contained in the '467 Patent constitutes patent infringement.  Grant Prideco asserts that Hydril's patent infringement claim is barred by § 12.12 of the Merger Agreement.

Hydril's antitrust claim emanates from a different patent.  Grant Prideco is the owner of United States Patent 6,244,631 ("the '631 Patent).  Hydril alleges that Grant Prideco obtained the '631 Patent through fraud and, therefore, its assertion of rights under that patent constitutes a violation of the antitrust laws.  Grant Prideco argues that Hydril does not have standing to assert an antitrust claim relating to the '631 Patent and that Hydril does not allege proper antitrust injury to support its claim.

Hydril filed this lawsuit in February 2005, asserting breach of contract, patent infringement, and antitrust violation.  In March 2005, Hydril filed an amended complaint asserting the same claims.  Defendants filed their Motion to Dismiss.  Plaintiff opposes Defendants' motion, but further requests leave to file a Second Amended Complaint.  The Motion to Dismiss has been fully briefed and argued, and it is now ripe for decision.

## II. ANALYSIS

### A. Standard for Motion to Dismiss

A district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Thus, the Court must determine whether the complaint states any valid claim for relief in the light most favorable to the plaintiff and with every doubt resolved in the plaintiff's behalf. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Manguno*, 276 F.3d at 725. However, the plaintiff must plead specific facts, not mere conclusory allegations or unwarranted deductions of fact, in order to avoid dismissal for failure to state a claim. *Collins*, 224 F.3d at 498; *United States v. Humana Health Plan of Texas*, 336 F.3d 375, 379 (5th Cir. 2003); *Jones v. Alcoa*, 339 F.3d 359, 362 (5th Cir. 2003), *cert. denied*, 540 U.S. 1161 (2004).

In deciding whether a claim should be dismissed, this Court must determine whether the complaint states a valid claim for relief when the pleading is construed in the light most favorable to the plaintiff and with every doubt resolved on the plaintiff's behalf. *See Collins* 224 F.3d at 498. Statements that merely create a suspicion that the plaintiff may have a right of action do not foreclose a motion to dismiss. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). Furthermore, legal conclusions, conclusory allegations, and

unwarranted deductions of fact do not suffice to prevent dismissal. *Jones*, 339 F.3d at 362. A motion to dismiss should also be granted when a successful affirmative defense appears on the face of the pleadings. *Kansa Reinsurance Co. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins,* 224 F.3d at 498. Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the complaint and are central to the claim." *Id.*

### B.     Patent Infringement Claim

Hydril alleges that Grant Prideco materially breached the Merger Agreement, causing the Merger Agreement to terminate. As a result, alleges Hydril, the licenses entered into with Grant Prideco under the terms of the Merger Agreement are no longer valid and Grant Prideco's continued use of Hydril's '467 Patent constitutes patent infringement. Grant Prideco argues that Hydril's patent infringement claim is barred by § 12.12 of the Merger Agreement.

The parties to the Merger Agreement clearly intended to define specifically and in a very limited way the claims which could be asserted against each other. Section 12.12(a) of the Merger Agreement, entitled "Rights Sound Only in Contract," provides that:

> Except for the rights and remedies expressly provided under this Agreement, each party waives any and all rights and remedies relating to this Agreement and the transactions contemplated hereby sounding in tort, fraud, misrepresentation, statute, warranty, constructive or resulting trust, equitable rescission, quantum meruit, implied contract, or injury outside this Agreement. The sole basis for any right or remedy by any party against any other party and

> their respective representatives relating to this Agreement and the transactions contemplated hereby or thereby is a breach of contract (or specific performance) action for breach of this Agreement or the other documents referenced herein.

Merger Agreement, § 12.12(a). The next paragraph, § 12.12(b), limits the damages recoverable for breach of the Merger Agreement to actual damages and waives any right to recover "consequential, incidental, special, multiplied, punitive, and exemplary damages." Merger Agreement, § 12.12(b). The next paragraph waives "any and all remedies and rights" under certain provisions of the Texas Business and Commerce Code. Merger Agreement, § 12.12(c).

Hydril concedes, as it must, that the licenses created in the Wedge Agreement relate to the Merger Agreement and the transactions contemplated by it. It is clear that patent rights are statutory rights and that patent infringement can cause injury outside the Merger Agreement. Moreover, the patent infringement claim in this case is based on Hydril's position that Grant Prideco's breach of the Merger Agreement resulted in the termination of the licenses for Grant Prideco to use the '467 Patent. As a result, Hydril's patent infringement claim in this case is squarely within the language of § 12.12(a) of the Merger Agreement.

Notwithstanding the clear language of § 12.12, Hydril argues that the parties only waived remedies for conduct during the negotiation of the Merger Agreement, not remedies for post-contractual conduct. The language used by the parties, both represented by highly competent counsel, is not so limited. Instead, it explicitly waives "any and all rights and remedies relating to [the Merger Agreement] and the transactions contemplated" thereby,

including the licenses created by the Wedge Agreement. It specifically waives rights created by statute, which include patent rights. The waiver in § 12.12(a) includes any "injury outside" the Merger Agreement, so long as the injury relates to the Merger Agreement and the transactions contemplated thereby.

Texas law is "committed to the principle of contractual freedom" and gives those who enter into contracts "the utmost liberty of contracting." *See Churchill Forge, Inc. v. Brown*, 61 S.W.3d 368, 370-71 (Tex. 2001). A contractual provision that waives rights and remedies will be enforced "unless one party is at a disadvantage in bargaining power and the contract is void as against public policy." *Derr Contruction Co. v. Houston*, 846 S.W.2d 854, 859 (Tex. App. – Houston [14th Dist.] 1992, no writ). There is no indication or allegation in this case that Hydril was at a disadvantage in bargaining power when the Merger Agreement was negotiated.

Hydril's patent infringement claim seeks to enforce statutory rights related to the Merger Agreement and the licenses contemplated by and created under the Merger Agreement. As a result, Hydril agreed in § 12.12(a) of the Merger Agreement to waive its right to enforce its statutory rights in the '467 Patent against Grant Prideco and the motion to dismiss the patent infringement claim must be dismissed.

6

C.     **Antitrust Claim**

Hydril alleges that Grant Prideco obtained the '631 Patent through fraud and that Grant Prideco is misusing the '631 Patent in violation of the antitrust laws. In order to assert an antitrust claim, Hydril must be a consumer or a competitor in the relevant market. *See Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 539 (1983); *Bell v. Dow Chem. Co.*, 847 F.2d 1179, 1183 (5th Cir. 1988).

In the Amended Complaint, Hydril defines the relevant market as "the market for 5-7/8" pipe." Amended Complaint, ¶ 32. Hydril concedes that it is not a consumer in that market. It is undisputed that Hydril does not manufacture or market 5-7/8" pipe and, therefore, is not a competitor in that market.

At oral argument, Hydril sought leave to amend its complaint to identify the relevant market as the market for finished drill pipe, which Hydril defines as the pipe with the connections attached. Hydril has only one sale of finished drill pipe as that term is defined by Hydril. Generally, Hydril provides the connections to a separate supply company that obtains the pipe and places the connections on the drill pipe as requested by the customer.

Hydril has described its antitrust injury as lost sales of connections and lost license revenue. Given this description of its injury, it is questionable whether a single sale of finished drill pipe will be sufficient to give Hydril standing to assert its antitrust claim. The interests of justice and fairness, however, favor permitting Hydril one final attempt to plead a sustainable antitrust claim.

Grant Prideco is not the sole owner of the '631 Patent. Because Hydril's antitrust claim is based on a challenge to the validity or enforceability of the '631 Patent, the disposition of the claim may establish a negative precedent which could impair the co-owners' ability to protect their rights in the patent. As a result, the co-owners are necessary parties to Hydril's antitrust claim. *See, e.g.*, FED. R. CIV. P. 19(a). Hydril's argument that a decision in this case would not operate as collateral estoppel in any action involving the co-owners is accurate but unpersuasive, because necessary party status may be established in the absence of collateral estoppel. *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1310 (5th Cir. 1986).

## III. CONCLUSION AND ORDER

Based on the foregoing, the Court concludes that Hydril's patent infringement claim is barred by § 12.12 of the Merger Agreement. The Court further concludes that the allegations in the current Amended Complaint do not adequately plead antitrust standing, but that Hydril should be permitted to file a Second Amended Complaint to plead additional facts in an attempt to establish standing for purposes of the antitrust claim. Because all owners of the '631 Patent would be necessary parties to any challenge to that patent, Hydril should include all such owners – based on its best information and belief – as Defendants when filing the Second Amended Complaint. Accordingly, it is hereby

**ORDERED** that Defendants' Motion to Dismiss [Doc. # 14] is **GRANTED** as to the patent infringement claim. As to the antitrust claim, it is further

**ORDERED** that Hydril is granted leave to file a Second Amended Complaint on or before **June 30, 2005**. Defendants' response to the Second Amended Complaint must be filed by **July 15, 2005**. If Defendants' response is a Motion to Dismiss, Plaintiff's response in opposition to the motion must be filed by **July 25, 2005**. It is further

**ORDERED** that counsel shall appear before the Court for a status and scheduling conference on **August 11, 2005 at 1:30 p.m.**

SIGNED at Houston, Texas, this **22nd** day of **June, 2005**.

_____
Nancy F. Atlas
United States District Judge