# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| HYDRIL COMPANY, L.P., *et al.*, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-0337 |
| | § | |
| GRANT PRIDECO, L.P., *et al.*, | § | |
|     Defendants. | § | |

## **MEMORANDUM AND ORDER**

This case is before the Court on the Motion for Partial Summary Judgment [Doc. # 63] filed by Defendants Grant Prideco, L.P., Grant Prideco, Inc., and Atlantic Richfield Company (collectively, "Grant Prideco"), to which Hydril Company L.P. ("Hydril US") and Hydril U.K., Ltd. ("Hydril UK") filed a Response [Doc. # 71], and Grant Prideco filed a Reply [Doc. # 76]. Also pending is Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint ("Motion to Dismiss") [Doc. # 64], to which Plaintiffs filed a Response [Doc. # 72], and Defendants filed a Reply [Doc. # 75]. Based on the Court's review of the full record and the application of governing legal authorities, the Court **grants** both motions.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Hydril US manufactures and sells connections used to attach segments of drill pipe for use in the drilling of oil and gas wells in the United States.  *See* Complaint [Doc. # 1], ¶ 6; Amended Complaint [Doc. # 9], ¶ 6.  Grant Prideco manufactures and sells both drill pipe and connections.

In 1997, Hydril US and Grant Prideco entered into a Merger Agreement pursuant to which the parties also entered into a licensing agreement referred to as the "Wedge Agreement."  Hydril US granted Grant Prideco a license to use its existing intellectual property, including United States Patent Reissue No. 34,467 ("the '467 Patent"), to make large diameter connections.  In exchange, Grant Prideco gave Hydril US the exclusive license to make smaller-diameter connections.  The method for terminating the Wedge Agreement is set forth in paragraph 4, its termination provision (the "Termination Provision").  Under the Termination Provision, if an allegedly defaulting party does not remedy the default within sixty days after written notice, "the other party shall have the right to terminate this [Wedge] Agreement upon written notice to the defaulting party."  *See* Wedge Agreement, ¶ 4.

Plaintiffs allege that Grant Prideco materially breached the Merger Agreement and, therefore, the Merger Agreement and the license contained in the Wedge Agreement terminated automatically.  Plaintiffs further allege that Grant Prideco's

continued use of the intellectual property contained in the '467 Patent constitutes patent infringement.  Grant Prideco asserts that the Wedge Agreement did not terminate automatically and that Hydril US has not complied with the Termination Provision.

Plaintiffs' antitrust claim emanates from a different patent.  Grant Prideco is the owner of United States Patent 6,244,631 ("the '631 Patent").  Plaintiffs allege that Grant Prideco obtained the '631 Patent through fraud and, therefore, the company's assertion of rights under that patent constitutes a violation of the antitrust laws.  Grant Prideco argues that Plaintiffs do not have standing to assert an antitrust claim relating to the '631 Patent and that they do not allege proper antitrust injury to support the antitrust claim.

Hydril US filed this lawsuit on February 2, 2005, asserting breach of contract, patent infringement, and antitrust violation.  In March 2005, Hydril US filed an amended complaint asserting the same claims.  In June 2005, the Court dismissed the patent infringement claim, and granted leave for Hydril US to file a Second Amended Complaint to plead additional facts in an attempt to establish standing for purposes of the antitrust claim.

Hydril US and newly-added Plaintiff Hydril UK filed a Second Amended Complaint on June 30, 2005, and Defendants moved to dismiss. By Memorandum and Order entered August 26, 2005 [Doc. # 46], the Court granted Defendants' motion to

dismiss the antitrust claim. Having dismissed both federal claims, the Court declined to exercise jurisdiction over the pendent state law claim and entered Final Judgment [Doc. # 47].

Defendants appealed the Court's decision to the United States Court of Appeals for the Federal Circuit. In January 2007, the Federal Circuit reversed the Court's dismissal of the patent infringement claim, and vacated the Court's dismissal of the antitrust and state law contract claim. *See Hydril Co. v. Grant Prideco L.P.*, 474 F.3d 1344 (Fed. Cir. 2007). The Federal Circuit remanded the case to this Court for further proceedings.

Following remand, Defendants filed the pending Motion for Partial Summary Judgment as to the patent infringement claim and the Motion to Dismiss the antitrust claim and the pendent state law contract claim. The motions have been fully briefed and are now ripe for decision.

## II.     PATENT INFRINGEMENT CLAIM

Plaintiffs allege that the Wedge Agreement terminated automatically as a result of Grant Prideco's material breach. Consequently, Plaintiffs allege, Grant Prideco's continued use of Hydril US's patented technology constitutes patent infringement. Defendants moved for summary judgment on the patent infringement claim, asserting

that Hydril US has failed to present evidence that it properly terminated the Wedge Agreement.

### A. Standard for Motion for Summary Judgment

Defendants seek summary judgment on Plaintiffs' patent infringement claim. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of

material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prod., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,*

185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

**B.   Analysis**

A patent holder's right to exclude others from using the patented technology "may be waived by granting a license." *See Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1350 (Fed. Cir. 2003); *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995) ("A licensee, of course, has an affirmative defense to a claim of patent infringement."). In this case, it is undisputed that Hydril US granted a license to Grant Prideco in the Wedge Agreement.

Plaintiffs allege that Grant Prideco materially breached the Merger Agreement, causing the Merger Agreement and the Wedge Agreement to terminate automatically.

As a result, Plaintiffs argue, the license granted to Grant Prideco is no longer valid and Grant Prideco's continued use of Hydril US's '467 Patent constitutes patent infringement. Grant Prideco argues that the Wedge Agreement and its license did not, as a matter of law, terminate automatically. Defendants also argue that Hydril US has not terminated the Wedge Agreement in accordance with the terms of the Termination Provision.

### C. Automatic Termination

Plaintiffs in the Second Amended Complaint request a declaratory judgment that Defendants' material breach of the Wedge Agreement "ended Grant Prideco's field-of-use license to Hydril US's patents, trade secrets, and know-how, including at least U.S. Patent Reissue No. 34-467." *See* Second Amended Complaint [Doc. # 33], ¶¶ 84, 85. Plaintiffs have identified no legal support under Texas law for its position that Defendants' alleged breach of the Wedge Agreement automatically terminated that agreement without regard to the terms of the Termination Provision and without any action by Hydril US, and this Court's independent research has revealed none. Where, as here, the parties agreed in their contract upon a termination clause that expressly and unambiguously sets out the circumstances under which and the procedures by which the contract could be terminated, the contract's termination clause controls. *See Exxon Corp. v. Atlantic Richfield Co.*, 678 S.W.2d 944, 947 (Tex. 1984); *Mecham v.*

*Strategic Info. Servs.*, 1994 WL 379167 * 7 (Tex. App. – Houston [14th Dist.] 1994, no pet.).  The Court rejects Plaintiffs' position that any material breach of the Wedge Agreement by Defendants caused the agreement and its license to terminate automatically contrary to the Termination Provision of the Wedge Agreement.

### D.     Termination Provision[1]

The Wedge Agreement provides a three-step process for termination.  First, a party that believes the other party has breached the agreement is required to give written notice of default.  Second, the non-defaulting party is required to allow sixty (60) days during which the allegedly defaulting party may cure the default.  Third, if the allegedly defaulting party fails to remedy the alleged default within the sixty-day period after written notice, the non-defaulting party has "the right to terminate this [Wedge] Agreement upon written notice to the defaulting party."  *See* Wedge Agreement, ¶ 4.  What is clear, at a minimum, is that termination of the Wedge Agreement requires each of the following in the proper sequence:  (i) written notice of a default sent by the non-defaulting party; (ii) passage of a sixty-day cure period; and (iii) written notice by the non-defaulting party of termination of the Agreement.

---

[1]     Hydril US does not allege in the Second Amended Complaint that it complied with the Termination Provision of the Wedge Agreement, but the Court will address the issue for the purposes of a complete record.

Hydril US does not allege that it complied with the terms of the Termination Provision of the Wedge Agreement, and the uncontroverted evidence in the record establishes that Hydril US did not terminate that Agreement in accordance with the Termination Provision.  In a July 21, 2005, letter from Hydril US to Grant Prideco, Hydril US states that it gave written notice of default on February 4, 2005, "in the form of an Original Complaint."[2]  Plaintiffs argue that Hydril US's service of the Complaint on Grant Prideco complied with the notice of default requirement of the Termination Provision.  Generally, "judges do not equate lawsuits with 'notice.'" *Begley v. Peabody Coal Co.*, 210 F.3d 374, *2 (7th Cir. Feb. 4, 2000).  Moreover, "notification to terminate the Agreement is effective only if its initial notification of the alleged breach provided Defendant[s] with an opportunity to cure." *American Seating Co. v. Transp. Seating, Inc.*, 220 F. Supp. 2d 845, 848 (W.D. Mich. 2002) (citing *Hallstrom v. Tillamook County*, 493 U.S. 20 (1989)).  Because the filing and service of a complaint does not give an opportunity to cure the alleged breach, the notice of breach is

---

[2]  Contrary to its July 21, 2005 letter, Hydril US asserts in its Response that *Grant Prideco viewed* Hydril US's October 6, 2004 letter as "a formal notice [of] default under the Wedge Thread License Agreement."  *See* November 10, 2004 Letter from Grant Prideco to Hydril US, Exh. 1 to Plaintiffs' Response [Doc. # 71].  Hydril US does not allege that it gave notice of default on either occasion, and the July 21, 2005 letter indicates clearly that *Plaintiffs* viewed the February 2, 2005, service of the Original Complaint as Hydril US's notice of default.

ineffective and the "subsequent attempt to terminate the Agreement cannot be given effect." *Id.* at 850.

### E. Conclusion Regarding Patent Infringement Claim

Plaintiffs allege only that the Wedge Agreement terminated automatically upon Grant Prideco's material breach of the agreement. Plaintiffs do not allege that Hydril US complied with the terms of the Termination Provision of the Wedge Agreement, and the uncontroverted evidence shows that Hydril US did not give Grant Prideco the required notice of breach until after it filed this lawsuit. Such "notice" is ineffective because it did not afford Grant Prideco a proper opportunity to cure the alleged default and Hydril US's subsequent "notice of termination" on July 21, 2005, did not terminate the Wedge Agreement. Because the undisputed evidence and the applicable legal authorities establish that Hydril US did not terminate the Wedge Agreement, Defendants are entitled to summary judgment on Plaintiffs' patent infringement claim because they have a license to use the patented technology.

### III. ANTITRUST CLAIM

Plaintiffs allege that Grant Prideco obtained the '631 Patent through fraud and misused the '631 Patent in violation of the antitrust laws. Defendants have moved to dismiss the antitrust claim for failure to state a claim for relief and for failure to allege facts that establish that Plaintiffs have standing to assert the claim.

### A. Standard for Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to seek dismissal of a claim if it fails to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A cause of action can fail to state a "claim upon which relief can be granted" if, *inter alia*, it fails to comply with the requirements of Rule 8(a)(2). *See, e.g., Buerger v. Southwestern Bell Tel. Co.*, 982 F. Supp. 1247, 1249-50 (E.D. Tex. 1997); *Bank of Abbeville & Trust Co. v. Commonwealth Land Title Ins. Co.*, 201 Fed. Appx. 988, * 2 (5th Cir. Oct. 9, 2006) ("a Rule 12(b)(6) motion to dismiss for failure to state a claim may be a proper vehicle to challenge the sufficiency of a pleading under Rule 8").

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The United States Supreme Court has made clear, however, that a plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. "Rule

8(a)(2) still requires a showing, rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests." *Id.* at 1965 n.3 (internal quotation marks omitted).

When the Complaint contains inadequate factual allegations, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 1966. "[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 1967 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)).

**B.     Analysis**

A party's enforcement of a patent that it obtained through fraud on the United States Patent Office may constitute a violation of § 2 of the Sherman Act if all the other elements of a § 2 claim are also established. *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965). To determine whether a plaintiff states a *Walker Process* claim, it is necessary to evaluate whether the defendant's monopoly power derived from the illegally obtained patent "in terms of the relevant market for the product involved." *See Walker Process*, 382 U.S. at 177.

Prior to determining whether Plaintiffs allege sufficient facts to state a claim for relief on their *Walker Process* claim, the Court must determine whether Plaintiffs allege sufficient facts to establish their standing to pursue the claim. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95 (1998). The standing question is a "threshold matter of jurisdiction." *See Cole v. General Motors Corp.*, 484 F.3d 717, 721 (5th Cir. 2007). Consequently, the standing issue must be resolved first, even in cases in which "the merits question is more readily resolved" and "the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied." *See id.* at 93. In examining a motion to dismiss for lack of subject matter jurisdiction, the district court may consider "the complaint supplemented by undisputed facts evidenced in the record. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

"Standing to pursue an antitrust suit exists only if a plaintiff shows: 1) injury-in-fact, an injury to the plaintiff proximately caused by the defendants' conduct; 2) antitrust injury; and 3) proper plaintiff status, which assures that other parties are not better situated to bring suit." *Doctor's Hosp. of Jefferson, Inc. v. Southeast Med. Alliance, Inc.*, 123 F.3d 301, 305 (5th Cir. 1997). The fundamental purpose of the standing inquiry in an antitrust case is to preclude lawsuits by persons who are only "tangentially affected by an antitrust violation." *See Blue Shield of Va. v. McCready*, 457 U.S. 465, 477 (1982).

Grant Prideco's '631 Patent covers only finished 5-7/8 inch drill pipe,[3] and the monopoly granted by a United States patent is confined to the United States. In this case, Hydril UK competes in the finished 5-7/8 inch drill pipe market "outside the United States."[4] *See* Second Amended Complaint, ¶¶ 15, 17, 28. Notably, Plaintiffs have not alleged that Hydril US, as opposed to Hydril UK, competes in the finished 5-7/8 inch drill pipe market within the United States or elsewhere. Consequently, Plaintiffs have not alleged an injury *proximately caused* by Defendants' alleged misuse of the '631 Patent. The '631 Patent does not extend to areas outside the United States, and it is only outside the United States that Plaintiffs compete in the finished 5-7/8 inch drill pipe market.

Plaintiffs have also failed to allege facts to support their conclusory assertion that they suffered an "antitrust injury." Antitrust injury "should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.

---

[3] Plaintiffs admit that the '631 Patent "claims a *finished* drill pipe . . .." *See* Second Amended Complaint, ¶ 32 (emphasis added).

[4] In their Responses to Grant Prideco's Requests for Admission, Plaintiffs admit that Hydril UK, not Hydril US, sold or submitted quotations for 5-7/8 inch drill pipe and each of those activities were outside the United States. *See* Plaintiffs' Responses to Grant Prideco's Second Set of Requests for Admission, Exh. C to Defendants' Motion to Dismiss [Doc. # 64]. In their briefing on appeal to the Federal Circuit, Plaintiffs characterized their allegations in the Second Amended Complaint as stating that Hydril US participates in the United States connections market and that Hydril UK has sold finished 5-7/8 inch drill pipe abroad. *See* Reply Brief for Plaintiffs-Appellants, Exh. B to Defendants' Motion to Dismiss.

It should, in short, be 'the type of loss that the claimed violations . . . would be likely to cause.'" *Id.* (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Although Plaintiffs are not required to show market-wide injury to competition in order to establish antitrust injury, they are required to allege factually that the alleged misconduct – in this case, the alleged misuse of the '631 Patent, injured Plaintiffs in a market in which they compete. *See id.* ("antitrust injury for standing purposes should be viewed from the perspective of the plaintiff's position in the marketplace"). In this case, there is no allegation that either Plaintiff competes in the finished 5-7/8 inch drill pipe market in the United States.

Plaintiffs argue that the Second Amended Complaint sufficiently alleges standing because it alleges Hydril US and Grant Prideco are competitors in the "connections market" and because Hydril UK "is an active participant in the market for 5-7/8 inch drill pipe, having sold this product once and quoted it for sale five additional times since 2001." Hydril US's participation in the connections market does not establish antitrust injury for purposes of a *Walker Process* claim because the '631 Patent covers finished 5-7/8 inch drill pipe; it does not cover connections. *See* '631 Patent, Exh. 3 to Second Amended Complaint. Hydril UK's extremely limited competition in the finished 5-7/8 inch drill pipe market does not establish antitrust injury for purposes of a *Walker Process* claim because there is no allegation that Hydril UK competes with

Grant Prideco in the United States, only that it competes in the relevant market outside the geographical coverage of the '631 Patent. As a result, these statements in the Second Amended Complaint do not allege that Hydril US or Hydril UK compete with Grant Prideco in the finished 5-7/8 inch drill pipe market in the United States – the only market covered by Grant Prideco's patent.

Plaintiffs also argue that they need only show that one of them is a "potential competitor" in the finished 5-7/8 inch drill pipe market in the United States in order to have standing to assert a *Walker Process* antitrust claim. Citing *Andrx Pharm., Inc. v. Bioval Corp.*, 256 F.3d 779-806-07 (D.C. Cir. 2001), Plaintiffs correctly state that they can establish standing with a demonstrated "intention to enter the field" and a "preparedness" to do so. Plaintiffs then allege that Hydril UK's "single actual sale and its continued marketing of 5-7/8 inch drill pipe up to the present day clearly satisfy the intention-and-preparedness standard." *See* Second Amended Complaint, ¶ 51. This "formulaic recitation" of "Hydril's" intention and preparedness, without adequate factual support, is insufficient in light of the Supreme Court's decision in *Twombly*, 127 S. Ct. at 1964-66. This is particularly true since it is only Hydril UK that has made the referenced single actual sale and has solicited business in the 5-7/8 inch drill pipe market, and Hydril UK's activities have been exclusively outside the United States.

Having failed to allege facts the support injury-in-fact or antitrust injury, Plaintiffs have not alleged a factual basis for their standing to assert the *Walker Process* claim. Defendants are entitled to dismissal of the antitrust claim.[5] Plaintiffs have been given two opportunities to amend the Complaint, once after Defendants (in briefing) and the Court (during oral argument) questioned Hydril US's ability to maintain an antitrust claim. Plaintiffs have had ample time to investigate the *Walker Process* claim, yet have failed to allege legally sufficient facts. The Court concludes Plaintiffs cannot establish standing to pursue the *Walker Process* claim, and that claim is dismissed.

## IV.   PENDENT STATE LAW CLAIMS

Because the federal patent and antitrust claims have been dismissed, under 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiffs' pendent state law contract claim. *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000); *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 296 (5th Cir. 1998), *cert. denied*, 526 U.S. 1098 (1999) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

---

[5]   This conclusion was reached also by Federal Circuit Judge Mayer in his dissent in the appeal of this case. *See Hydril Co. v. Grant Prideco LP*, 474 F.3d 1344, 1354 (Fed. Cir. 2007). The majority declined to address the issue.

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court concludes that Defendants are entitled to summary judgment on Plaintiffs' patent infringement claim because Defendants have a license that did not terminate automatically and has not been otherwise terminated in accordance with its terms.  The Court further concludes that Plaintiffs lack standing to assert the *Walker Process* antitrust claim.  Having dismissed the federal claims, the Court dismisses the pendent state law claim without prejudice.  It is hereby

**ORDERED** that Defendants' Motion for Partial Summary Judgment on the patent infringement claim [Doc. # 63] and Defendants' Motion to Dismiss the antitrust and pendent state law claim [Doc. # 64] are **GRANTED**.  The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, this **19th** day of **June, 2007**.

_____
Nancy F. Atlas
United States District Judge